The next case on our calendar for argument is Smith v. Kijakazi, and I think both counsel are on by video in this case. Can you both hear us? Yes, Your Honor. And you responded audibly so we can hear you. All right. Would counsel for the commissioner put yourself on mute during the argument from counsel for the other side, and then we'll proceed. Mr Hatfield. Thank you. May it please the court. I am Chad Hatfield representing Mr. Joseph Smith. I would like to start remarks by stating that the administrative law judge, the ALJ gave significant weight to the testimony of Dr. Robert Smiley for reasons that he was that he had reviewed the entire longitudinal history, and that he has expertise and familiarity with social career rulings. All of these are very important as Dr. Smiley was the only medical source to consider the entire longitudinal record. Let me can I ask you a couple questions just preliminarily. I take it your own your argument revolves entirely on doctors on the floor. For the most part, I think credibility and everything else was all affected by the judges. Right, right. So but I mean, if if Dr. Smiley had never testified, for example, you wouldn't have a basis for challenging this, this decision, would you? Well, it'd be very difficult, Your Honor, because the challenges on the physical side alone, standing on its own, with the vocational expert found some jobs for that not very many, but found some jobs on the mental health on its own, that providers didn't find disabling limitations. So it all comes to the combination of the two. I understand that you're claiming there's error at step five, and the VE had the wrong hypothetical. But that's all based on your notion that Dr. Smiley's testimony wasn't treated appropriately. Is that fair? It all lead from that, Your Honor, yes. Well, can I ask you, do you need Dr. Smiley's testimony considering that there's also evidence in the record, for example, the review by Dr. Kraft, finding that Smith had mild mental limitations? And is, is that not independent evidence that there's, apart from Dr. Smiley's testimony, that your client had mild mental limitations that needs to be considered in combined effect with the severe physical limitation in the RFC analysis? Yes, that's correct. Social Security ruling 96-8P even says that both severe and non-severe impairments must be considered. And even though some might be non-severe, but taken in combination, may have disabling limitations. And I understand your argument to be, in the way I read the ALJ's order at the step five analysis, that the ALJ considered the mental, the mild mental impairment independently and found no impact, and then considered the physical impairment independently and found, you know, some effects, but never considered the mental, mild mental limitations in combination with the physical limitations in assessing the RFC. Is that correct? Yes, that is correct. I think it was demonstrated at the hearing when Dr. Smiley, and what I would say is not as an offhand comment, but almost felt compelled to state that objective findings may find a light RFC with occasional manipulation, but he said because of chronic pain and the somatoform problems, he had an awful lot of missed days of work. Well, but that's not what Dr. Smiley said. That's why I asked you about whether your focus is solely on Dr. Smiley. Dr. Smiley offers an opinion about the non-mental parts of the case, if you will, and then says, I'm not supposed to talk about this, but I'd speculate, and then he says something. And I don't know why the ALJ is required to deal specifically with the speculation of a witness who says, I'm not really opining about this. I'm just speculating. Why does the ALJ then have to deal specifically with speculation from a witness who begins the speculation by saying, I'm not supposed to be opining about this, so I'm just speculating? I understand the other argument that Judge Sung just made, but I don't read your brief as making that argument. Your brief is arguing that Dr. Smiley's testimony was inappropriately treated, and I have a hard time thinking that an ALJ has to respond to something that a witness says is not part of my opinion, it's just speculation. Tell me why the ALJ didn't handle that appropriately. Well, first of all, I think at the top of page 42, Dr. Smiley says he has psychiatric conditions apart from somatoform disorder, which I am not qualified to assess. Does he say that he's qualified to address his somat, I won't say the word right, but that you'd have a psychological medical expert as well, which we didn't in this case, that I know you don't want me to address these, but... Counsel, what did you say? He was qualified? Because at the top of 42, he says his possible somatoform that I'm not qualified to address. Isn't that what he says? Well, he is qualified. He's a medical doctor. He can make those assessments. Well, he may well be qualified by virtue of his degree as a medical doctor, but he's not offering an opinion on it. He rather clearly says I'm not qualified to address it, but I'd speculate that he says that he would miss several days of work each month because of it. And my question is when a doctor, whatever his qualifications are, offers up that testimony, I'm not qualified to address it, I'm not supposed to address it, but I'd speculate, does the ALJ really have to treat that as if it was an opinion? Well, Your Honor, he didn't say speculate, and that's very important. He said I suspect. Suspect, I'm sorry. You're right. I had the wrong S word. And I put the definitions of those in the reply brief just because they're almost nearly identical to what opine is what they typically use in this case. He didn't say he may possibly or it is probable that he would. He said I suspect that he would miss an awful lot of days because of his chronic pain, chronic pain and somatoform disorder. Can I take you back to Judge Sunk's question? Because it interests me in this case. I don't read your brief as saying, even if Dr. Smiley was appropriately treated, there was error because when the hypothetical was posed to the VE and when the RFC was composed, the ALJ didn't say, now, let's consider both the mental and physical problems together. Uh, that might be a very good argument, but I don't find it in your brief. Am I missing it in your brief? Well, that was the whole point of the brief and rejecting the district court's treatment. Well, that was the whole point of the brief because you were complaining about Dr. Smiley. So I'm asking whether or not your brief makes this argument independent of any error that you think occurred with Dr. Smiley's testimony. It's under the heading of Dr. Smiley, but that is why the treatment of Dr. Smiley is inappropriate. It's because you have to consider the effects of severe and non-severe impairments. Let me try to be fair and ask the question differently. It's the one I tried to ask at the beginning. Let's assume that we disagree with you about the treatment of Dr. Smiley's testimony. Do you lose the case? Well, no, I think, Your Honor, it's almost directly corresponds with the Beecher case, which recited where it has a duty to consider both the severe and non-severe, the physical and the non-physical. Now, in that case, Judge Box, as I understand it and help me if I've got this right, we're spending all this time with Smiley, who isn't even a psychiatrist, but we do have four psychiatrists, two of whom examined him. And as I read it and help me if I don't have this right, Genthe examined him and made no diagnosis of somatoform. Friedman says somatoform, but doesn't opine as to how mild it is and says he's okay to work. And the two reviewers, Ether says he has no impairment and Kraft says it's not severe. So given those very weak uh provisions independent of Smiley, why wasn't, why is it not substantial evidence not to go into somatoform disorders when you have several who say he doesn't have any and several who certainly say it's not severe? Dr. Friedman, there's a qualifying statement that keeps getting left out of the briefing. He said purely from a psychiatric standpoint, we look in the report from Dr. Friedman, he makes references that Mr. Smith, who did not understand that he had mental health conditions, has stated that he has moods that go up and down that vary depending on his pain levels. It was cited, which was also noted by Dr. Smiley, he was getting tested for COPD and emphysema due to shortness of breath. The pulmonary function tests were normal. It was only then we've seen a sworn statement in lieu of testimony. He said, I did not understand that. It was only after that they were told that was related to his mental health that even sought mental health treatment. He consistently did not complain of mental health conditions and that's why a lot of these one-shot evaluations were so difficult and that's why the importance of Dr. Smiley, who reads the full longitudinal history, who sees the statements by Dr. Peterson, who released him to typing skills that said he's still having these flares of pain three to four days a week up to seven out of ten pain. Okay, can I interrupt you for a second? And I know your time is up, but we'll give you a couple minutes for rebuttal. What if the, let's assume for a moment that the ALJ had said, I've heard all the testimony about the mental disorder, so some auto form symptom, and based on the testimony of two or three of the psychiatrists, I don't think you got it. And so I'm not going to include it in the hypothetical or in the RFC at all. Wouldn't the record have supported that conclusion? At least there's at least two psychiatrists who basically say it's not a problem at all. There was substantial evidence would support that conclusion, wouldn't it? Well, no, in the Beecher case that came before this court specifically, and they stated that it's not a matter of choosing one opinion over the other. When you have one source, you consider both the physical and the mental health, because they're not. I'm saying the ALJ listens and says he just doesn't have a mental health impairment. One of the psychiatrists said he didn't. The other said to the extent that he did, it was quite mild. And so I don't think he's impaired by his mental health at all. Now, that's not a finding that the ALJ made in this case. But you do agree that finding, if he had made it, would have been supported by substantial evidence in this record. Well, and it was just so treated so differently by this court in Beecher, where they found that even if it's non-severe, and even given the phrase doubtful that he could compete in the labor market, it was held that at step five, the commissioner has a burden that when you have this physical and mental health, they're so intertwined and compete with each other, it's a different set of facts. That's an uncontradicted opinion in the record. Counsel, in this case, the ALJ did actually credit and find at step two that Smith had mild mental limitations. And our case law is clear, and the regulations are clear, that at step five, the agency is supposed to consider all limitations, including mild limitations, in combination with each other, not just separately. Is that correct? And I understand your brief to raise the issue that the ALJ did not actually consider the mental and physical impairments in combination. Is that correct? I also understand your brief to raise the issue of whether the hypothetical presented to the vocational expert was complete. The Ninth Circuit case law is clear that the list of symptoms that are supposed to be presented to the vocational expert must be specific and complete. The way I read the ALJ's decision is they did find that Mr. Smith suffers from some pain, just not as much pain as he testified to. Is that a correct reading of the ALJ's findings? That was her finding for the subjective complaints. Was pain included as a symptom presented to the vocational expert? No, because the judge accepted just Dr. Smyth's testimony on the objective evidence. And I also understand the ALJ's decision is to have found that, as we discussed, that Mr. Smith does suffer from some mild mental limitations. Were any of those mental limitations that were found as substantiated and caused by medically determinable impairments included in the list of impairments presented to the vocational expert by the ALJ? The answer to this is yes. Right? It helps you. Were any of those mental impairments included in the list of impairments presented to the vocational expert? I'm sorry, we're having trouble hearing you. I'm sorry, I thought you were meant to translate into the RFC. No, but yeah. We've taken you over. We'll give you some time for rebuttal. Let's hear from the Commissioner. Good morning. I'm Shada Stuckey, appearing on behalf of the Commissioner of the Social Security Administration. We ask the Court to affirm the judgment of the District Court and uphold the ALJ's decision. The great weight of evidence in this case supports the ALJ's finding that Mr. Smyth was not disabled. This includes numerous medical opinions. I'm going to interrupt you and just ask you the same questions that I asked other counsel for Mr. Smyth. Did the ALJ find at Step 2 and credit Dr. Craft's finding that Mr. Smyth suffers from mild mental limitations in three of the areas relevant to employment, including concentration, ability to understand information and retain it, and ability to work with others? Well, there's a distinction at Step 2. Even though, yes, the ALJ did find mild limitations. Is there any evidence in the record that the ALJ, I understand the way I read the ALJ's decision at Step 5 is that the ALJ found that those mental limitations on their own did not affect residual functional capacity. But I do not see anything in the ALJ's decision or other parts of the record indicating the ALJ considered those mild mental limitations in combination with the severe physical limitation. Can you point me to anything in the ALJ's decision where she explicitly considers the combined effect of the mental and physical impairments? Well, I would look to the paragraph where the ALJ addresses Dr. Smiley's opinion. And that's at, I think, CAR 25, I believe. And it's the first full paragraph where she discusses Dr. Smiley's opinion. And in the last paragraph, the ALJ here is considering the mild somatoform disorder in conjunction with Dr. Smiley's opinions that's discussing physical limitations. I think this is pretty clear evidence that the ALJ did consider these combined effects. Now, consideration is different. Consideration of that she finds that he does have mild somatoform disorder and that that does confirm that he does have a mild mental impairment. What I'm asking you is at Step 5. At Step 5, I read information where she says the mild mental limitations essentially don't in and of themselves limit his ability to work. And then she addresses how the physical limitations restrict him to light duty. But I do not see any analysis saying considering the physical limitations coupled with the mild mental limitations, this is the residual functional capacity as required by the regulations. Can you point me to an analysis at Step 5 that actually you won't find that kind of analysis at Step 5. That type of analysis happens at step between Step 3 and Step 4. ALJs are trained to look for specific limitations as to a claimant's functioning. Throughout the case law, you can see ALJs aren't even required to address opinions that do not state specific functional limitations. So, you'll never see a residual functionality, residual functional capacity analysis that just discusses pain because it's pretty vague. These ALJs are trained to look for specific functional limitations. Can I take you to Step 4 then? And tell me, now throw Dr. Smiley's testimony out of your mind for the moment. So, let's assume that the ALJ treated Dr. Smiley's testimony entirely appropriately and said, I find that it supports that he has physical pain. I don't find that it doesn't add anything to what I already know about somatoform. We get to Step 4. We know that there's some mental impairment, mild. Judges found that at Step 2. We know that there's some physical impairment, not mild. The judge puts together the RFC. Does the judge consider the mental impairment? Yes, but the only specific limitation linked to the somatoform disorder. Just, the answer is yes. Now, let me ask you the next question. When putting together the RFC, what the judge is supposed to do is determine whether or not all the impairments claimed impair somebody's ability to work, right? Yes? Yes. So, tell me how the mental impairment gets functioned, gets factored into the RFC. Other than Dr. Smiley, we know there's no doctor who says the mental impairment would affect his ability to work. They just say he has a mild mental impairment. So, again, taking Dr. Smiley out of it, in the absence of any testimony about how the mental impairment, either in conjunction with physical impairments or taken on its own, would deal with somebody's ability to work, what's an ALJ supposed to do under those circumstances? So, an ALJ would look through the medical record and find out if there's any specific limitations that could be linked to the mental disorder. The only place in the record where somatoform disorder is discussed is in Dr. Friedman's opinion. Now, yes, Dr. Friedman acknowledges there's a somatoform diagnosis, and that could have mild effects, but he goes on to say that there's no specific limitations. So, let me go back to Judge Sung's question. We understand he has this impairment. The only testimony in the record is that this impairment would not affect his ability to work if we take Dr. Smiley out of it. But we know he has the impairment, and we know he has physical impairments that affect his ability to work. And I don't know the answer to this. At step four or step five, must the ALJ then say, I know about the stuff that affects his ability to work. I know about this impairment, which, so far as I know, doesn't affect his ability to work. But I must compose the RFC and the hypothetical to the VE somehow figuring out how this mental impairment affects his ability to work. That's an awkward question, but you see what I'm asking. I think so. By the time we get to step four and step five, the residual functionality capacity has already been established. That happens between step three and step four. Assume that in the absence of Dr. Smiley's testimony, there's no error in the RFC. Yeah, there's no error in the RFC. And once you've established the RFC, step four and step five are based on that RFC. Okay, so the ALJ has already... You're saying that the RFC analysis happens in between step three and step four. That's fine. Can you, by regulation, when determining the RFC, the ALJ must consider the combined effects of mild mental limitations and the severe physical impairment. And didn't the ALJ at step two say, make an express finding that Mr. Smith has mild mental limitations based on Dr. Craft's review in three areas? Yes. Can you point me to anything where the ALJ, in determining the RFC, considered the combined effect of those mild mental limitations and the severe physical limitation? Yes, that's on CAR 25, the first full paragraph, where the ALJ is discussing Dr. Smiley's opinion, talking about physical limitations. And then also looking at the fact that yes, claimant had mild somatoform disorder, but this is not something that needs to be included. They acknowledge that it exists, but I don't see anything saying, and this is how the combined effect of the physical and mental impairments, you know, this is my determination of what the remaining residual functional capacity could be. Well, you do see on page CAR, where the residual functional analysis is set forth on CAR 20. That is, say, it's number five, and then it's all in and lays out all the limitations. These are the limitations that the ALJ found were supported by the evidence after assessing everything that comes after that. CAR 20 through CAR 26, where all the evidence is discussed, the ALJ considers... The conclusory statement is what you're saying, I should assume, implies that it was considered in combination. The ALJ, yes. The ALJ is required to consider all these things, but is not required to adopt limitations into the RFC based on every mild functional impairment. The ALJ says, I've considered the physical limitations and the things over and above the physical limitations, and that leads to the RFC. The question I would ask, if I buy that, is, is he required to repeat the mild limitations in his question to the VE, or is that accounted for by the fact that he's accounted for it in the RFC, which he puts to the VE? Exactly. It's accounted for in the RFC, which is presented to the vocational expert, and that's the way it works. That's why I think this is a case about whether or not there's an impairment in the RFC, not in the question posed to the VE. So I want to go back to where Judge Sung and I were trying to ask the same question, maybe with different intent, but we're trying to ask the same question. He finds a mild mental disorder in Step 2. There's no evidence in the record, other than Dr. Smiley's testimony, that this mild mental disorder in any way impairs his ability to work. He never expressly says anywhere, either at Step 4 or elsewhere, well, I know he has some limitations from his physical problems. I ought to now think about whether this mild mental problem, which on its own doesn't impair his ability to work, ought to somehow be combined with those physical problems to lead me to what I consider the RFC. And what we're trying to ask is, is the ALJ required, the regs require that the ALJ consider everything. The question is, how does the ALJ document whether he's done that, or do we conclude that he didn't do that from this record? I mean, when I look at this record, I see, I mean, this is a very thoroughly developed decision. You see very thorough analysis of the model thing, where you can see how the ALJ has thought about all these different issues, talks about the somatoform disorder. So, I mean, these six pages of single space type, that's where you're seeing the consideration of all the relevant medical evidence. We have limited time, so I think you're arguing essentially that the ALJ's decision speaks for itself on this issue. So, I'm going to move us on to the hypothetical presented to the vocational expert. And in Emory, this court said the hypothetical post of the ALJ must reflect all the symptoms and limitations found by the ALJ, including, for example, pain. And the ALJ did find that Mr. Smith suffers from some pain. The way I read the ALJ's decision, the ALJ did not credit the extent to which Mr. Smith claims to suffer from pain, and just said that, but though crediting the finding of somatoform disorder, as well as the physical impairment, that he does suffer from some pain, yet pain was not listed as a symptom presented to the vocational expert. Is that correct? Yes. And the way I read, again, the ALJ's decision at step two is that there was a crediting of finding that he does suffer from a mild mental impairment that does affect him in three functional areas. Were any of those limitations included in the hypothetical presented to the vocational expert? So, the hypothetical presented to the vocational expert would be required to include the residual functional capacity. And the limitations in the residual functional capacity would have to be specific functional limitations. There would never be any mention of just vague reference to pain. That's not the type of limitations that are supposed to be included in a residual functional capacity and presented to a vocational expert. And I do not read any of the appellant's briefing to be raising that issue. That's just not something... There's a section of the brief that says that the hypothetical presented to the vocational expert was incomplete. Because of the absence of Dr. Smiley's testimony. Well, because of the absence of addressing the combined effects of the physical and mental limitations. And there's also questioning in the record regarding Mr. Smith's ability to concentrate that was not included in the original hypothetical proposed by the ALJ. And the vocational expert says, yes, if he had an inability to concentrate for 15% of the time, that would disqualify him from all employment. So, I think the record is there that there's evidence. My understanding of what the ALJ is required to do is to consider the entirety of the record in including all symptoms and impairments credited to have a medically determinable source, which the ALJ did find that Mr. Smith has pain that is medically determinable and has mild mental limitations that are medically determinable. And what I hear you arguing essentially is that the ALJ at the RFC stage can say, I don't think that even though I find that those limitations are there, right, I can say that they aren't great enough to affect his ability to work standing alone. And therefore, I'm just going to ignore them and only focus on the physical limitations. But that seems to me to be in tension with our case law saying that in the own regulations that says at when determining residual functional capacity, the ALJ must consider all impairments, including mild ones, in combination. And our case law says that all symptoms must be presented to the vocational expert. We've taken you way over, so why don't you respond to that question as briefly as you can. I don't know what the question was. I mean, it seems to me the ALJ said independently the mental impairments aren't enough to affect his residual functional capacity. And therefore, I don't have to account for them. But I don't see anything in the order saying that that seems to me to be in tension with both the regulations in our case law saying that the residual functional capacity analysis as well as the hypothetical that has to be presented to the vocational expert has to consider everything in the record, all symptoms, all impairments, including mild ones. Can you explain that discrepancy? The ALJ did consider everything just because the limitation, I mean, again, the only evidence, the only place that somatoform disorder is even mentioned in the medical record is in Dr. Friedman's opinion, where he says, yes, it's diagnosed, but it doesn't really have an effect on the functioning. And the ALJ did consider that and considered Dr. Smiley's offhand remark and then considered all this evidence. I mean, it's all laid out in, again, many pages of single space type. I mean, it's very considered. And then, yes, there's no limitation. There's no specific functional limitation in the residual functional capacity. Because, again, the only evidence was this offhand remark by Dr. Smiley and then Dr. Friedman's opinion. Is there perhaps, counsel, just to wrap up, is there perhaps a dual use of the word limitation? That is that the gentleman has certain problems that could be called limitations, but the ALJ is to determine, are there functional limitations? And he says, no, and we have to decide, is there substantial evidence for that? Is that a fair way of thinking about it? Yes. I mean, there have to be specific functional limitations. It just can't be vague references to pain that are incorporated. So let me, we need to bring this to a close because we've given both sides a fair chance, but let me pose this question to both sides. Is there any evidence in this record, in the absence of Dr. Smiley's testimony, that Mr. Smith's impairment of mild somatoform disorder posed any limitation on his ability to work? In other words, I can have various limitations which might not impose any constraints on my ability to work. And Dr. Friedman says it doesn't affect his ability to work. Is there any evidence, Dr. Smiley says what Dr. Smiley says. This is a question about the record. It's not a question about your positions in the case. Is there anything else in the record where any expert addresses whether or not this mental condition affects his ability to work, other than Dr. Smiley and Dr. Friedman? The only place I found it referenced in the medical record was in Dr. Friedman's opinion. Okay, thank you. And let me give you a minute for rebuttal, but could you address that first question? It's just a factual question about the record. Dr. Friedman's opinion, as I read it, is he has this mild disorder, but I don't think it affects his ability to work. Dr. Smiley says what Dr. Smiley says. Is there anything else in the record that tells me, assuming he has this disorder, which the ALJ found, how it affects his ability to work? You left yourself on mute, I'm sorry. Okay, yes, there is, and that's how Dr. Smiley didn't bring this out of thin air. Nurse Anderson had given the opinion evaluating a COPD that he would likely lead to several call-ins, but it's not based on objective evidence, leading to think it is from the somatoform disorder. Is the nurse's evaluation of his somatoform disorder or something else? No, see, that's why this is so important to bring the two things together. The nurse was saying, based on the COPD, there's not objective evidence supporting it. No, I'm just asking a very specific question, and I just need your help on it. I know what Dr. Friedman says. I know what Dr. Smiley says. Anything else? I'm going to look through this record before, you know, when we decide this case. Point to me any place else in this record where anybody talks about what effect somatoform disorder would have on Mr. Smith's ability to work. Yes, but you just have to understand, somatoform disorder won't be used in the record throughout. It's something that's more looked at as a longitudinal history. I understand your arguments about other stuff. Very specific question. Either yes to something, or no, there's not something. Mr. Smith's sworn statement, CAR-266-68, I think outlines it very nicely. Dr. Peterson, page 375, noting three or four days a week, having pain ranging up to 7 out of 10 in severity. That's the part that I think the ALJ does take into account and says he's got this pain, and here's why I come up with a functional. That's the physical side. I'm talking about the mental side. And so my question is, again, does any doctor, you know, if Dr. Smiley had offered whatever he offered, Dr. Friedman offers whatever he offered, did anybody else say this will affect his ability to work? Well, they all noted things that would affect his ability to miss work. I mean, he noted he would miss work. Yeah, let me make sure nobody else has questions here. If not, let me thank both sides for their arguments in answering our questions today, and this case will be submitted. Thank you.
judges: Boggs, HURWITZ, UNKNOWN